## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **PROGRESSIVE CASUALTY INSURANCE COMPANY,** <br> **Plaintiff** <br><br> **VERSUS** <br><br> **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF OMNI NATIONAL BANK, ET AL.** <br> **Defendants.** | **CIVIL ACTION NO. 1:12-cv-01103-RLV** |

## FDIC-R'S OPPOSITION TO PROGRESSIVE CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND...................................................................5

III.  ARGUMENT........................................................................................6

    A.    The Court Should Defer Decision on Progressive's
        Motion Until After Discovery is Completed.......................................6

    B.    Alternatively, the Court Should Deny Progressive's
        Motion Outright.................................................................................11

        1.    Rules of Insurance Policy Construction Support a
             Finding of Coverage ..............................................................11

        2.    The IvI Exclusion Does Not Apply .........................................12

             a.    FDIC is not an "Insured Person" or the
                   "Organization".................................................................12

             b.    The IvI Exclusion is Not A Regulatory
                   Exclusion ......................................................................13

             c.    The IvI Exclusion Does Not Exclude
                   Coverage for Suits by FDIC, as Receiver .....................16

             d.    The IvI Exclusion is Aimed at Preventing
                   Collusive Suits..............................................................23

        3.    The Policy's Definition of "Loss" Does Not
             Preclude Coverage .................................................................24

             a.    Progressive's Construction of the Defaulted
                   Loan Carve-Out Conflicts with its Prior
                   Statements and the Policy..............................................24

             b.    Progressive's Arguments Conflict With
                   Industry Practice...........................................................27

Response in Opposition to MSJ

   c. Progressive's Fails to Cite Relevant Case Authority..................................................28

   d. Progressive's Arguments Render Coverage Illusory..................................................29

  4. Ambiguity Must be Resolved in Favor of Coverage ..................................................30

IV. CONCLUSION..............................................30

Response in Opposition to MSJ

## TABLE OF AUTHORITIES

**Cases**

*Am. Cas. Co. of Reading, PA v. Baker,* 758 F. Supp. 1340 (C.D. Cal. 1991), *aff'd on other grounds*, 22 F.3d 880 (9th Cir. 1994)........................................... 16, 19

*Am. Cas. Co. of Reading, PA v. FDIC,* 791 F. Supp. 276 (W.D. Okla. 1992) 13, 16, 17, 30

*Am. Cas. Co. of Reading, PA v. FSLIC,* 704 F. Supp. 898 (E.D. Ark. 1989) . 13, 17, 19, 30

*Am. Cas. Co. of Reading, PA v. Sentry Fed Sav. Bank,* 867 F. Supp. 50 n.14 (D. Mass. 1994).................................................................... 14, 16, 23

*Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.,* 136 F. Supp. 2d 1340 (N.D. Ga. 2001).................................................................... 12, 30

*Biltmore Associates, LLC* v. *Twin City Fire Insurance Co.,* 572 F.3d 663 (9th Cir. 2009)....................................................................22

*Branning v. CNA Ins. Cos.,* 721 F. Supp. 1180 (W.D. Wash. 1989)............... 17, 19

*Certain Underwriters at Lloyd's v. FDIC, et. al.*, 1:12-cv-01740-JEC (N.D. Ga.) ..7

*Claussen v. Aetna Cas. & Sur. Co.*, 888 F.2d 747 (11th Cir. 1989)...................7, 30

*Cont'l Cas. Co. v. Allen,* 710 F. Supp. 1088 (N.D. Tex. 1989)..............................13

*Cox Communications v. National Union Fire Ins. Co.*, 708 F. Supp. 2d 1332 (N.D. Ga. 2010)....................................................................20

*D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447 (1942) ................................19

*FDIC v. Bowen,* 865 P.2d 868 (Colo. App. 1993)..................................................17

*FDIC v. Klein*, No. 1:12-cv-00896-RLV (N.D. Ga.)................................................1

*FDIC v. Mijalis,* 800 F. Supp. 397 (W.D. La. 1992)....................................... 16, 30

Response in Opposition to MSJ

*FDIC v. Nat'l Union Fire Ins. Co.,* No. 5-85-1089 WL 251473, at *4 (E.D. Tenn. Jan. 6, 1989) ............................................................................. 17, 19

*FDIC v. Zaborac,* 773 F. Supp. 137 (C.D. Ill. 1991) .............................................16

*Fed Ins. Co. v. Hawaiian Elec. Ind., Inc.* No. 94-00125HG, 1995 WL 1916123, *7 (D. Haw. Dec. 15, 1995) ...............................................................................13

*Fid. & Deposit Co. v. Zandstra,* 756 F. Supp. 429 (N.D. Cal. 1990).............. passim

*Finci v. Am. Cas. Co.,* 593 A.2d 1069, 1081 (1991) ...............................................30

*First Specialty Ins. Corp. v. Flowers*, 284 Ga. App. 543 (2007).............................12

*FSLIC v. Mmahat,* No. 86-5160, 1988 U.S. Dist. LEXIS 1825, at *3-5 (E.D. La. Mar. 3, 1988).......................................................................................... 17, 30

*Grant Thornton, LLP v. FDIC*, 435 Fed. Appx. 188 (4th Cir. 2011).....................19

*Greenwich Ins. Co. v. Lecstar Corp.*, No. 1:05-CV-3275-RLV, 2006 U.S. Dist. LEXIS 53601 (N.D. Ga. July 20, 2006) .............................................................24

*Henninger v. Std. Ins. Co.*, 332 F. App'x 557 (11th Cir. 2009) ...............................8

*Holcomb v. Word*, 239 Ga. 847 (Ga. 1977) .............................................................7

*Humboldt Bank v. Gulf Ins. Co.,* 323 F. Supp. 2d 1027 (N.D. Cal. 2004)..............28

*Hyde v. Fidelity Deposit Co. of Maryland,* 23 F. Supp. 2d 630 (D. Md. 1998)......22

*In re Buckeye Countrymark, Inc.*, 251 B.R. 835 (Bankr. S.D. Ohio 2000)...... 21, 22

*In re County Seat Stores, Inc.*, 280 B.R. 319 (Bankr. S.D.N.Y. 2002) ...................20

*In re Laminate Kingdom, LLC d/b/a Floors Today*, No. 07-10279-BKC-AJC, 2008 WL 704396, at *1 (Bankr. S.D. Fla. Mar. 13, 2008)...........................................21

*In re Molten Metal Tech., Inc.*, 271 B.R. 711 (Bankr. D. Mass. 2002)...................21

*Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 466 S.E.2d 48 (1995) .................29

Response in Opposition to MSJ

*MegAvail, Inc. v. Ill. Union Ins. Co.,* No. 05-1374, 2006 U.S. Dist. LEXIS 78329, at *7-9 (D. Or. Oct. 26, 2006) ............................................................................23

*Mt. Hawley Insurance Co. v. FSLIC,* 695 F. Supp. 469 (C.D. Cal. 1987) ..............22

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.,* 1:94-cv-2081, 1996 U.S. Dist. LEXIS 22806 (N.D. Ga. June 4, 1996) (Tidwell, J.), *aff'd per curiam,* 148 F.3d 1070 (11th Cir. 1998) .................................................20

*Niemuller v. National Union Fire Ins. Co.*, 1993 U.S. Dist. LEXIS 18476, 11-12 (S.D.N.Y. Dec. 29, 1993) ............................................................................................19

*O'Melveny & Myers v. FDIC,* 512 U.S. 79 (1994)......................................... 18, 19

*Powell v. Am. Cas. Co. of Reading, PA,* 772 F. Supp. 1188 (W.D. Okla. 1991) ....22

*Progressive Casualty Insurance Company v. Delaney*, Case No. 2:11-CV-0678-LRH-PAL (D. Nev.).........................................................................................10

*Reliance Insurance Co. v. Weis,* 148 B.R. 575 (E.D. Mo. 1992) ............................20

*RTC* v. *Aetna Cas. & Surety Co. of Illinois,* 25 F.3d 570 (7th Cir. 1994)..............28

*Ryan v. State Farm Mut. Auto. Ins. Co.,* 261 Ga. 869, 413 S.E.2d 705 (1992).......11

*Slaughter v. Am. Cas. Co. of Reading, PA,* 842 F. Supp. 371 (E.D. Ark. 1993), *rev'd on other grounds*, 37 F.3d 385 (8th Cir. 1994) ............................. 16, 19, 23

*Smith v. Cont'l Cas. Co.*, 616 F. Supp. 2d 1286 (N.D. Ga. 2007)......................8, 11

*Snook v. Trust Co. of Ga. Bank of Savannah, N.A.,* 859 F.2d 865 (11th Cir. 1988) .6

*Southwest Georgia Financial Corp. v. Colonial American Casualty and Surety Co.,* 397 Fed. Appx. 563 (11th Cir. 2010) ........................................................28

*Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224 (11th Cir. 2005)... 24, 30

*St. Paul Fire & Marine Ins. Co. v. FDIC,* 765 F. Supp. 538 (D. Minn. 1991) 13, 17, 30

*Third Fed. Sav. & Loan Assoc. v. Fireman's Fund Ins. Co.,* 548 F.2d 166 (6th Cir. 1977)..................................................................................................28

*Tifton Machine Works v. Colony Ins. Co.*, 224 Ga. App. 19, 480 S.E.2d 37 (1996) ..................................................................................................................29

*Transp. Ins. Co. v. Piedmont Constr. Group, LLC*, 301 Ga. App. 17, 21, 686 S.E.2d 824 (2009) ...........................................................................................29

*Wallace v. Brownell Pontiac-GMC Co.*, 703 F.2d 525 (11th Cir. 1983) .................6

*Willson v. Venderlick,* 467 B.R. 390 (Bankr. W.D. La. 2012) ...............................20

*Yessenow v. Executive Risk Indem., Inc.*, 953 N.E.2d 433 (Ill. App. 2011)...........21

*Zurich Am. Ins. Co. v. Boyes*, No. 3:99-CV-2350-X, 2001 U.S. Dist. LEXIS 15123, at *6 (N.D. Tex. July 31, 2001) .........................................................21

**Statutes**

12 U.S.C. § 1811(a) ..............................................................................................18

12 U.S.C. § 1821(d) ..............................................................................................22

12 U.S.C. § 1821(d), (k) .......................................................................................18

12 U.S.C. § 1821(k) ...............................................................................................18

12 U.S.C. §§ 1821(d)(2)(A)(i) & (d)(10)-(11).......................................................18

Fed. R. Civ. P. 56(d) ................................................................................. 2, 4, 6, 11

O.C.G.A. § 13-2-2(2) and (5) ................................................................................30

Response in Opposition to MSJ

**<u>FDIC-R'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT</u>**

Federal Deposit Insurance Corporation ("FDIC-R"), as Receiver of Omni National Bank ("Omni" or the "Bank"), respectfully submits this opposition to the Motion for Summary Judgment [Doc. 47] (the "Motion") filed by Progressive Casualty Insurance Company ("Progressive"). Progressive's policy provides coverage for FDIC-R's claims in *FDIC v. Klein*, No. 1:12-cv-00896-RLV (N.D. Ga.) (the "D&O Action"). The Court should defer ruling on the Motion until FDIC-R is able to obtain, through discovery, facts essential to support its opposition. Alternatively, the Motion should be denied.

## I.    INTRODUCTION

*"The D&O Policy does not contain any of the following exclusions often found in other D&O contracts: *__Regulatory__ ... ."[1]*

*. . . .*

*"A shareholder derivative action was brought against a bank's board of directors alleging mismanagement. The suit alleged that the directors failed to properly supervise the financial institution's loan officers. Loans outside the individual officers' loan authority were*

---

[1]     *See* Letter dated 5/16/07 from Progressive to Omni's insurance agent, Exhibit ("Exh.") A-5 hereto, at PIC-OMNI 00192 (emphasis added); Coverage Summary Handbooks, Exhs. A-6, A-7, and A-8 (emphasis added).

*funded and subsequently charged off.  The shareholders sought to recover the **value of the charged-off loans**."*[2]

In the Motion, Progressive seeks to deny coverage under a policy of insurance issued to the directors and officers of Omni (the "Policy")[3] in blatant contradiction of (1) Progressive's written statement to Omni that the Policy covers "regulatory suits," and (2) Progressive's statements in each and every Coverage Summary Handbook provided to its insureds that its Policy covers "regulatory suits" and damages based on the "value of charged-off loans." Progressive now contends that the Policy, for which Omni paid more than $270,000 in premiums, covers none of these claims or risks.

Because FDIC-R has not had an opportunity for full discovery on these issues, the Court should defer ruling on the Motion pursuant to Fed. R. Civ. P. 56(d) until discovery has been completed.  FDIC-R's Rule 56(d) request is supported by the Declaration of Lana Robertson ("Robertson Decl."), Exhibit ("Exh.") "A" hereto.

---

[2]   *See* Progressive Coverage Summary Handbooks, Exh. A-6 at PIC-Omni 05120, Exh. A-7 at PIC-Omni 05149, and Exh. A-8 at PIC-Omni 05178 (emphasis added).

[3]   Progressive Directors & Officers / Company Liability Insurance Policy for Financial Institutions, Policy No. 0038420-07, which Progressive sold to Omni for the term June 9, 2007 to June 9, 2008, with a Discovery Period of June 9, 2008 to June 9, 2009, Exh. A-2.

Response in Opposition to MSJ

Alternatively, the Motion should be denied because Progressive's two substantive bases for evading coverage are without legal merit. As the overwhelming majority of courts have held, Insured v. Insured ("IvI") exclusions do not apply to claims by the FDIC as receiver against former officers and directors of a failed bank. As a matter of law, FDIC-R does **not** stand in the shoes of the failed bank, as Progressive erroneously contends.[4] Instead, FDIC-R brings claims in its own right to recover losses suffered by the Deposit Insurance Fund, depositors and creditors resulting from the Officer Defendants'[5] tortious conduct.

Significantly, when D&O insurers, like Progressive, intend to exclude claims by the FDIC-R, they attach broad regulatory exclusions to their policies. The Policy in this case has no such exclusion, confirming that it is intended to cover FDIC-R's claims.

Further, the defaulted loan carve-out from the term "Loss" in the Policy does not bar FDIC-R's claims because FDIC-R does **not** seek to recover from the Insureds unpaid loans, as Progressive incorrectly contends. *See* Memo, p. 2. FDIC-R asserts negligence and gross negligence claims against the Insured Officer

---

[4]   *See* Progressive Memorandum in Support of Motion for Summary Judgment [Doc. 47-1] ("Memo"), p. 1.

[5]   Stephen M. Klein, Irwin W. Berman, Benjamin J. Cohen, Jules N. Greenblatt, Karim W. Lawrence, Eugene F. Lawson, III, Jeffery L. Levine, Shannon C. Livengood, Gregory W. Patten, and Constance E. Perrine.

Response in Opposition to MSJ

Defendants arising from their violations of Omni's lending policies, federal safety and soundness regulations, and principles of safe and sound lending.  Under the language of the Policy, the relevant "Loss" is the loss the Officer Defendants become legally obligated to pay arising from FDIC-R's tort claims against them. As a result of the FDIC's claim, the Insureds will not become legally obligated to pay unpaid loans.  Moreover, because officers and directors of a bank are in the business of making loans, their primary risk of personal liability arises from their exposure to tort liability and damages measured by the losses on those loans. Under Progressive's interpretation of the defaulted loan carve-out in the definition of "Loss," the Policy would cover nothing, in violation of Georgia law and policy.

Finally, the Policy must be interpreted in accordance with the insureds' reasonable expectations, and ambiguity must be construed against the carrier and in favor of coverage.  These settled principles of insurance policy construction require denial of Progressive's Motion.

For these reasons, FDIC-R requests that the Court defer ruling on Progressive's Motion under Fed. R. Civ. P. 56(d), pending completion of discovery and supplemental briefing.  Alternatively, the Court should deny the Motion.

## II.    FACTUAL BACKGROUND

In the D&O Action, FDIC-R alleges that seven of the Officer Defendants were negligent and grossly negligent in approving over 200 unsafe and unsound loans on low-income residential properties within the Bank's Community Development Lending Division ("CDLD").  FDIC-R also asserts claims of negligence and gross negligence against Klein, the Bank's former Chief Executive Officer, and Berman, its former President, for failing to supervise Levine, the former Chief Redevelopment Lending Officer, and the CDLD lending function.[6] The total loss to the Deposit Insurance Fund is estimated at $330.6 million.

Progressive issued the Policy to Omni and the Officer Defendants for the period June 9, 2007 through June 9, 2008 with an aggregate limit of liability of $10 million.  *See* Policy, Exh. A-2.  Omni elected to extend the discovery period from June 9, 2008 through June 9, 2009.  *Id.*  In exchange for the Policy and discovery period extension, Omni paid premiums exceeding $270,000.  *Id.*

---

[6]     FDIC-R asserts additional claims against certain Officer Defendants for conduct resulting in $12.6 million in expenditures on distressed other real estate owned properties after September 15, 2008.

Response in Opposition to MSJ

## III.   ARGUMENT

### A.   The Court Should Defer Decision on Progressive's Motion Until After Discovery is Completed

Summary judgment is premature.  Fed. R. Civ. P. 56(d) provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Whether to grant a Rule 56(d) request for deferral of a motion for summary judgment is a matter within the district court's discretion. *Wallace v. Brownell Pontiac-GMC Co.*, 703 F.2d 525, 527 (11th Cir. 1983).

"The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery … ."  *See Snook v. Trust Co. of Ga. Bank of Savannah, N.A.,* 859 F.2d 865, 870 (11th Cir. 1988).  For this reason, summary judgment ordinarily should not be granted before discovery has been completed.  *Snook*, 859 F.2d at 870.

Discovery has not yet commenced in this case.  The last answer to be filed is due on or before August 28, 2012.  Therefore, the Rule 26(f) conference will be held on or before September 11, 2012.  *See* Order [Doc. 46].  FDIC-R anticipates

Response in Opposition to MSJ

that discovery will commence in this case no later than September 25, 2012. Further, in the D&O Action, also pending before this Court, FDIC-R has filed a motion for pretrial consolidation of this action, the D&O Action, and the Lloyd's Action[7] in order to streamline the pretrial and discovery process. Discovery in the D&O Action commenced on July 1, 2012. Hence, if this Court orders pretrial consolidation of this action and the D&O Action, discovery in this case will begin immediately.

Contrary to Progressive's erroneous contentions, extrinsic evidence is admissible in this case because the Policy is ambiguous. Under Georgia law, extrinsic evidence becomes admissible "when a contract remains ambiguous after the pertinent rules of construction have been applied." *Claussen v. Aetna Cas. & Sur. Co.*, 888 F.2d 747, 749 (11th Cir. 1989) (citing *Holcomb v. Word*, 239 Ga. 847 (Ga. 1977)). "An insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can be fairly made. When one of these interpretations results in coverage and another results in exclusion, ambiguity exists in the insurance policy." *Smith v. Cont'l Cas. Co.*, 616 F. Supp. 2d 1286,

---

[7]     *Certain Underwriters at Lloyd's v. FDIC, et. al.*, 1:12-cv-01740-JEC (N.D. Ga.) (seeking declaratory judgment on Lloyd's coverage obligations under its director and officer liability policy issued to Omni covering the 2008-09 policy period).

Response in Opposition to MSJ

1296 (N.D. Ga. 2007).   "[I]f there is an ambiguity, latent or patent, it may be explained."  O.C.G.A. § 13-2-2(1); *Henninger v. Std. Ins. Co.*, 332 F. App'x 557, 558 (11th Cir. 2009).[8]

Here, both patent and latent ambiguities exist relative to each of the Policy provisions upon which Progressive relies to deny coverage.  With respect to the IvI exclusion, the carve-out for shareholder claims, addressed below, creates a patent ambiguity, because it suggests the IvI exclusion was meant to exclude coverage only for collusive actions.   Progressive's actions and representations create numerous latent ambiguities regarding the intent and meaning of the IvI exclusion. Progressive did not include any regulatory exclusion in the Policy, as was industry practice according to Douglas R. Emerick – an industry expert on the custom and practice of underwriting of D&O insurance liability – when the insurers intended to exclude coverage for claims by the FDIC.[9]  Progressive included such regulatory exclusions in other D&O policies.[10] Further, Progressive expressly represented to

---

[8]     A latent ambiguity occurs when the language of the instrument is clear, but coupled with some extrinsic fact, the language could have two or more possible meanings.  A patent ambiguity is an ambiguity apparent on the face of the instrument and arising by reason of any inconsistency or inherent uncertainty of language used, leading to an indefinite or confused meaning.

[9]     Declaration of Douglas Emerick ("Emerick Decl."), Exh. B hereto, ¶ 12(b), (c).

[10]    *See* Progressive D&O Liability Policy No. 0027942-09, which Progressive sold to Tattnall Bancshares, Inc, Exh. A-3.

Response in Opposition to MSJ

Omni that "regulatory suits" *are* covered under the Policy.[11]   In addition, the Policy is effective post-failure for "Claims" arising out of pre-failure "Wrongful Acts," indicating that the Policy intended to provide coverage for claims by FDIC as receiver.[12]

With respect to the defaulted loan carve-out from the word "Loss," patent ambiguities exist because (i) the carve-out is most reasonably interpreted *not* to apply to tort claims against bank officers and directors and (ii) the Policy's "Legal Lending Limit Exclusion," addressed below, strongly indicates that Progressive intended to cover claims for mismanagement based on negligent or grossly negligent lending.  A latent ambiguity also exists because Progressive's Coverage Summary Handbooks represented to its insureds that the Policy covers claims against its insureds for damages measured by "the value of charged-off loans." Exhs. A-6 through A-8.

FDIC-R should have an opportunity to develop extrinsic evidence on these factual issues of intent, meaning and construction of the Policy.  FDIC-R intends to seek discovery from Progressive on the factual issues identified in the Robertson Declaration ("Robertson Decl.") attached hereto.  *See* Robertson Decl., Exh. A, at

---

[11]     Exhs. A-6 (PIC-Omni 5120); A-7 (PIC-Omni 5149); A-8 (PIC-Omni 5178).

[12]     *See* Emerick Decl., Exh. B, ¶ 12(f).

¶ 8.   The extrinsic evidence to be developed   may include the drafting and underwriting histories of the Policy and additional admissions by Progressive.

The limited extrinsic evidence already available exposes the hypocrisy, self-contradiction and inequity inherent in Progressive's current coverage positions. Progressive asks the Court to hold that the Policy unambiguously excludes coverage for the very risks and claims that it represented that it covered when it sold the Policy to its insureds - "regulatory actions" and damage claims arising from "charged-off loans."  Exh. A-5 at PIC-Omni 00192; Exh. A-6 at PIC-Omni 05120; Exh. A-7 at PIC-Omni 05149; and Exh. A-8 at PIC-Omni 05178. Progressive's contradictory statements alone establish ambiguities that justify discovery before the Court entertains Progressive's summary judgment motion.

FDIC-R anticipates that Progressive will argue that discovery is unnecessary because it has already produced documents to FDIC-R in response to a pre-suit administrative subpoena.   To the contrary, most of the documents previously produced by Progressive are not relevant to the instant coverage dispute, warranting additional discovery.

This week, in *Progressive Casualty Insurance Company v. Delaney*, Case No. 2:11-CV-0678-LRH-PAL (D. Nev.), the district court denied a nearly identical motion for summary judgment filed by Progressive because discovery had not yet

-10-

commenced.   The court held that discovery was necessary because the details surrounding FDIC's claims against the officers and directors would necessarily "impact the application and interpretation of the terms and conditions of the underlying insurance policy."   *See* Order dated August 20, 2012, Exh. C hereto. The same holds true here.   For all of these reasons, pursuant to Fed. R. Civ. P. 56(d), the Court should defer decision on the Motion until after discovery is completed.

**B.     Alternatively, the Court Should Deny Progressive's Motion Outright**

**1.     Rules of Insurance Policy Construction Support a Finding of Coverage**

Under Georgia law, a court construing an insurance policy must attempt "to ascertain the intention of the  parties by looking to the insurance contract as a whole."  *Ryan v. State Farm Mut. Auto. Ins. Co.,* 261 Ga. 869, 872, 413 S.E.2d 705, 707 (1992).   When an insurance policy is capable of being construed two ways, one resulting in coverage and the other resulting in exclusion, ambiguity exists.  *Smith v. Cont'l Cas. Co.*, 616 F. Supp. 2d 1286, 1296 (N.D. Ga. 2007). "[A]mbiguities are to be strictly construed against the insurer as drafter of the document and in favor of the insured to provide maximum coverage."   *Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.,* 136 F. Supp. 2d 1340, 1348 (N.D. Ga.

Response in Opposition to MSJ

2001).  "[A]ny exclusion from coverage sought to be invoked by the insurer is likewise strictly construed."  *Id.*  Finally, "insurance contracts are to be read in accordance with the reasonable expectations of the insured, where possible."  *Id.*

### 2.   The IvI Exclusion Does Not Apply

Under the rules of construction set forth above, Progressive cannot meet its burden of proving that the IvI exclusion applies to FDIC-R's claims.  *First Specialty Ins. Corp. v. Flowers*, 284 Ga. App. 543, 544 (2007).

### a.   FDIC is not an "Insured Person" or the "Organization"

The terms of the IvI Exclusion do not exclude suits by the FDIC.  It provides that "[t]he **Company** shall not be liable for **Loss** on account of any **Claim** made against any Insured Person … brought or maintained by or on behalf of any other **Insured Person** or the **Organization."**  The definitions of "Insured Person" and "Organization" do not include the FDIC, a receiver, or similar entity.  In other places in the Policy, Progressive used broad, expansive terms to indicate when it intended to capture other entities or persons.  *See, e.g.,* Policy, Exh. A-2, Section IV(I), at p. 4 ("Financial Impairment" is "the status of the **Company** resulting from: (1) the appointment by any state or federal official, regulatory agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage, or liquidate the **Company** or any

**Subsidiary** … .").  In the IvI exclusion, Progressive deliberately defined "Insured Person" and "Organization" narrowly, and should not now be allowed to redefine those terms more expansively to include FDIC. *See Am. Cas. Co. of Reading, PA v. FSLIC,* 704 F. Supp. 898, 902 (E.D. Ark. 1989); *Fed Ins. Co. v. Hawaiian  Elec. Ind., Inc.* No. 94-00125HG, 1995 WL 1916123, *7 (D. Haw. Dec. 15, 1995); *Am. Cas. Co. of Reading, PA v. FDIC,* 791 F. Supp. 276, 278 (W.D. Okla. 1992); *St. Paul Fire & Marine Ins. Co. v. FDIC,* 765 F. Supp. 538, 548 (D. Minn. 1991); *Cont'l Cas. Co. v. Allen,* 710 F. Supp. 1088, 1098 (N.D. Tex. 1989).

### b.   The IvI Exclusion is <u>Not</u> A Regulatory Exclusion

The IvI exclusion does not bar FDIC-R's claims, as Progressive erroneously contends, because the IvI Exclusion is not a regulatory exclusion.  The industry standard method for excluding coverage for suits by FDIC as receiver was then, and is now, to include a broad regulatory exclusion in a D&O policy.  *See* Emerick Decl., Exh. B, at ¶ 12(b).  The Policy at issue contains no such exclusion, as Progressive repeatedly confirmed to Omni both in correspondence and Coverage Summary Handbooks representing that the Policy covers "regulatory suits."  *See* Emerick Decl., Exh. B, ¶ 12(c), 12(d); *see also* Exhs. A-5 through A-8.

In accordance with standard industry practice, Progressive, like other  D&O insurers, includes a broad regulatory exclusion *in addition to* an IvI exclusion when

it wishes to exclude coverage of suits by FDIC, as receiver.   For example, Progressive's D&O Policy No. 0027942-09 issued to Tattnall Bancshares, Exh. A-3, contains the following comprehensive regulatory exclusion endorsement in addition to the IvI exclusion:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim against any Insured by or on behalf of, in the right of, at the behest of, or with the participation of:

> (1) any Agency, in any capacity whatsoever and regardless of in whose name or for whose benefit such Claim is made[.]

Exh. A-3.  The Tattnall policy explicitly defines "Agency" to include the FDIC, as receiver.[13]  *Id.*  Had Progressive intended to exclude all claims brought by FDIC-R, it could have included such a broad regulatory exclusion in the Policy, but it chose not to do so.

In *Am. Cas. Co. of Reading, PA v. Sentry Fed Sav. Bank,* 867 F. Supp. 50, 60 n.14 (D. Mass. 1994), the court noted that the absence of a regulatory exclusion supported FDIC's position that an IvI exclusion was inapplicable to its claims. The court asked:

---

[13]  Similarly, Indian Harbor Insurance Company uses a broad regulatory exclusion that defines "regulator" to include the FDIC as receiver, and states that the insurer shall not be liable for loss "in connection with any Claim made against any Insured by or on behalf of, or in the right of, or at the behest of, or with the participation of … any Regulator, in any capacity whatsoever, regardless of in whose name or for whose benefit the Claim is made." Exh. A-4. *See also* Exhs. A-9 through A-12.

Response in Opposition to MSJ

> If the parties had intended to exclude coverage when the RTC and FDIC sued directors and officers, why was that language not specifically used as in the Regulatory Exclusion?

Progressive does not attempt to answer this question.   The plain and obvious answer is that the Officer Defendants never intended, and never agreed, to exclude regulatory suits from coverage under the Policy.   The Court should not create a regulatory exclusion in the Policy where none exists, or give Progressive a reprieve from its obligation to set forth exclusions clearly.

Progressive has incorrectly argued in other cases that the absence of a regulatory exclusion is a "red herring," supposedly because regulatory exclusions bar coverage only when FDIC appears as regulator, as opposed to receiver.   This strained sophistry is contrary to industry standards, Progressive's own practices, and its representation to its insureds when it sold them the Policy.   As set forth above, the insurance industry uses regulatory exclusions when it seeks to exclude coverage of claims brought by FDIC both as regulator *and* receiver.   Emerick Decl., Exh. B, ¶ 12(b).   Further, Progressive's own regulatory exclusion, quoted above, excludes coverage for claims brought by an "Agency," which is defined to include FDIC, as receiver.   Finally, the only examples Progressive has offered in other cases of regulatory claims that supposedly would *not* be barred by the IvI exclusion are prohibition and civil money penalty claims under 12 U.S.C. § 1818

-15-

(a) and (b).   However, such claims are expressly excluded from the Policy's definition of "Loss,"[14] and would not be covered under any circumstances.  *See* Emerick Decl., Exh. B, ¶ 12(h).

Put simply, when Progressive has sought to exclude claims by FDIC, as receiver, it has employed its industry standard regulatory exclusion. Otherwise, its Policy covers such claims.

### c.   The IvI Exclusion Does Not Exclude Coverage for Suits by FDIC, as Receiver

The vast majority of courts hold that IvI exclusions do not apply to claims brought by FDIC, as receiver, or similar agencies.  *See Sentry,* 867 F. Supp. at 59 (D. Mass. 1994); *Slaughter v. Am. Cas. Co. of Reading, PA,* 842 F. Supp. 371, 374 (E.D. Ark. 1993), *rev'd on other grounds*, 37 F.3d 385 (8th Cir. 1994); *FDIC v. Mijalis,* 800 F. Supp. 397, 403 (W.D. La. 1992); *Am. Cas. Co. of Reading, PA v. FDIC,* 791 F. Supp. 276, 277-78 (W.D. Okla. 1992); *Am. Cas. Co. of Reading, PA v. Baker,* 758 F. Supp. 1340, 1349-50 (C.D. Cal. 1991), *aff'd on other grounds*, 22 F.3d 880 (9th Cir. 1994); *FDIC v. Zaborac,* 773 F. Supp. 137, 143-44 (C.D. Ill. 1991), *aff'd on other grounds sub nom FDIC v. Am. Cas. Co.*, 998 F.2d 404 (7th Cir. 1993); *St. Paul Fire & Marine Ins. Co. v. FDIC,* 765 F. Supp. 538, 548 (D.

---

14   Under the Policy, Loss does not include (a) "costs to comply with any non-monetary or injunctive relief … in complying with any other federal … laws of any kind" or (b) "civil fines or penalties imposed by law."

-16-

Minn. 1991); *FDIC v. Am. Cas. Co. of Reading, PA,* 814 F. Supp. 1021, 1025-26 (D. Wyo. 1991); *Fid. & Deposit Co. v. Zandstra,* 756 F. Supp. 429, 433 (N.D. Cal. 1990) (citing cases); *Am. Cas. Co. of Reading, PA v. FDIC,* No. 86-4018, 1990 U.S. Dist. LEXIS 6065, at *41 (N.D. Iowa Feb. 26, 1990); *Am. Cas. Co. of Reading, PA v. FSLIC,* 704 F. Supp. 898, 901 (E.D. Ark. 1989); *FDIC v. Nat'l Union Fire Ins. Co.,* No. 5-85-1089, 1989 WL 251473, at *4 (E.D. Tenn. Jan. 6, 1989); *Branning v. CNA Ins. Cos.,* 721 F. Supp. 1180, 1184 (W.D. Wash. 1989); *Am. Cas. Co. of Reading, PA v. FDIC,* 713 F. Supp. 311, 316 (N.D. Iowa 1988); *FSLIC v. Mmahat,* No. 86-5160, 1988 U.S. Dist. LEXIS 1825, at *3-5 (E.D. La. Mar. 3, 1988); *FDIC v. Nat'l Union Fire Ins. Co.,* 630 F. Supp. 1149, 1152, 1157 (W.D. La. 1986); *FDIC v. Bowen,* 865 P.2d 868, 871 (Colo. App. 1993).

Progressive attempts to wriggle out from under this crushing weight of authority by erroneously contending that its IvI exclusion includes "by, on behalf of, or at the behest of" language not addressed in the foregoing cases. However, Progressive's argument that FDIC-R's claims are "by, on behalf of, or at the behest of" Omni because FDIC-R supposedly "stepped into its shoes" is foreclosed by FIRREA. Under FIRREA, FDIC-R's claims are brought by, on behalf of, and in the right of the FDIC-R, an entity separate from Omni, to recover losses suffered by the federal Deposit Insurance Fund and the bank's depositors, creditors and

shareholders.  *See* 12 U.S.C. §§ 1821(d)(2)(A)(i) & (d)(10)-(11); § 1823(d)(3)(A).

Thus, FDIC-R is *not* the agent of the failed bank.  By federal statute, it is

independent of the bank and represents the interests of entities and persons other

than the bank.

> Further, 12 U.S.C. § 1821(k) provides:

> A director or officer of an insured depository institution
> may be held personally liable for monetary damages in
> any civil action **by, on behalf of, or at the request or
> direction of the Corporation**, which action is
> prosecuted **wholly or partially for the benefit of the
> Corporation - (1) acting as conservator or receiver of
> such institution … .**

*Id.* (emphasis supplied).  The "Corporation" is defined as the FDIC, as receiver.

12 U.S.C. § 1811(a).  Omni is **not** a party in interest, and any recovery will go, not

to Omni, but to those injured by the Officer Defendants' wrongful conduct.   12

U.S.C. § 1821(d), (k).

O'Melveny & Myers v. FDIC, 512 U.S. 79 (1994), cited by Progressive, has

no relevance here.  In *O'Melveny,* the Supreme Court considered whether federal

law preempts the state law of imputation when FDIC sues as the receiver of a

failed bank.  The decision did not involve insurance, let alone the IvI exclusion.  In

insurance cases, numerous courts have held that because FDIC represents the

interests of depositors, shareholders and creditors of the failed institution, the FDIC

is more than an instrumentality of the failed bank. *Slaughter,* 842 F. Supp. at 374; *Baker,* 758 F. Supp. at 1349-50*; Am. Cas.,* 814 F. Supp. at 1026; *Zandstra,* 756 F. Supp. at 432-33 & n.7*; Am. Cas.,* 713 F. Supp. at 316 (citing *D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447, 472-73 (1942), in which the Court noted that "the [FDIC] did not simply step into the private shoes of local banks … .   Under the Act, the [FDIC] has a dual relation of creditor or potential creditor and of supervising authority toward insured banks"); *Branning,* 721 F. Supp. at 1184; *National Union*, 630 F. Supp. at 1157 (when FDIC sues a failed bank's officers and directors, FDIC sues "in a different capacity than would its predecessor bank").  *O'Melveny* neither addressed nor disturbed any of the foregoing decisions.

For the same reasons, Progressive's reliance on Georgia authorities addressing successor liability is misplaced.   Numerous courts conclude that receivers have "greater standing than ordinary successors-in-interest because they, empowered by statute, represent the bank as well as the creditors, depositors, and shareholders of the bank."  *Niemuller v. National Union Fire Ins. Co.*, 1993 U.S. Dist. LEXIS 18476, 11-12 (S.D.N.Y. Dec. 29, 1993)) (Sotomayor, J.).  *See also Grant Thornton, LLP v. FDIC*, 435 Fed. Appx. 188, 200-201 (4th Cir. 2011) (the FDIC has additional rights beyond that of the bank in receivership, because the FDIC vindicates the rights of parties beyond the failed bank); *Zandstra,* 756 F.

Supp. at 433 (FDIC was not an ordinary successor and, thus, deserved different treatment from that accorded other successors).

The lone Georgia decision upon which Progressive relies, *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.*, 1:94-cv-2081, 1996 U.S. Dist. LEXIS 22806 (N.D. Ga. June 4, 1996), *aff'd without opinion*, 148 F.3d 1070 (11th Cir. 1998), is both distinguishable and unpersuasive. *Olympia* involved claims by a bankruptcy trustee – not a receiver.  Notably, the key decision upon which *Olympia* relied, *Reliance Insurance*, distinguished claims brought by FDIC and RTC from claims by a bankruptcy trustee.  *See Reliance Insurance Co. v. Weis,* 148 B.R. 575, 580 (E.D. Mo. 1992).  Further, *Olympia's* holding that the IvI exclusion applied to claims by a bankruptcy trustee was subsequently *rejected* in *Cox Communications v. National Union Fire Ins. Co.*, 708 F. Supp. 2d 1332 (N.D. Ga. 2010).  In *Cox*, the court followed the great weight of authority holding that a bankruptcy trustee, who exercises unique statutory duties pursuant to the Bankruptcy Code, does **not** "assume[] the identity of the Debtor" merely because he is "asserting  claims founded on the rights of the Debtor."  *Id*. at 1330 (quoting *In re County Seat Stores, Inc.*, 280 B.R. 319, 324-325 (Bankr. S.D.N.Y. 2002)).[15]

---

[15]    *Olympia* has also been criticized by other courts.  *See Willson v. Venderlick,* 467 B.R. 390 (Bankr. W.D. La. 2012) (*Olympia* failed "to assess or even

Due to the trustee's unique statutory role, the vast majority of courts hold that "on behalf of" terminology in IvI exclusions does *not* apply to claims by bankruptcy trustees because they represent the bankruptcy estate and creditors rather than the defunct entity. *See, e.g., Yessenow v. Executive Risk Indem., Inc.*, 953 N.E.2d 433, 444 (Ill. App. 2011) (agreeing with other courts that a bankruptcy trustee asserts claims on behalf of estate and for benefit of creditors, not on behalf of the bankrupt entity); *In re Buckeye Countrymark, Inc.*, 251 B.R. 835, 840-41 (Bankr. S.D. Ohio 2000) (same principles); *In re Molten Metal Tech., Inc.*, 271 B.R. 711, 726 (Bankr. D. Mass. 2002) (holding that exclusionary language encompassing a "claim belonging to" or a "claim brought on behalf of," would not apply to trustee's claims); *Zurich Am. Ins. Co. v. Boyes*, No. 3:99-CV-2350-X, 2001 U.S. Dist. LEXIS 15123, at *6 (N.D. Tex. July 31, 2001) (trustee in bankruptcy has responsibilities and obligations defined by the Bankruptcy Code "that do not neatly square with the phrase 'on behalf of,'" and holding the clause ambiguous); *In re Laminate Kingdom, LLC d/b/a Floors Today*, No. 07-10279-BKC-AJC, 2008 WL 704396, at *1 (Bankr. S.D. Fla. Mar. 13, 2008) (same principles).

---

acknowledge the case law recognizing the legal distinction between a bankruptcy trustee and the defunct Chapter 7 debtor." *Id*. at 397).

Response in Opposition to MSJ

*Biltmore Associates, LLC* v. *Twin City Fire Insurance Co.,* 572 F.3d 663 (9th Cir. 2009), cited by Progressive, has no application because it involved a debtor in possession, which is a mere continuation of the defunct entity, rather than a bankruptcy trustee.  Further, the *Biltmore* court emphasized the obvious collusion between the debtor-in-possession and the alleged wrongdoers present in that case, concluding that such collusion "is among the kinds of moral hazard that the insured versus insured exclusion is intended to avoid."  *Id.* at 674.  As set forth below, there is no such collusion in this case.

The very few contrary decisions upon which Progressive relies are unpersuasive.  *See* Memo, p. 14.  *Powell v. Am. Cas. Co. of Reading, PA,* 772 F. Supp. 1188, 1191 (W.D. Okla. 1991), is bereft of any useful analysis.  *Hyde v. Fidelity Deposit Co. of Maryland,* 23 F. Supp. 2d 630 (D. Md. 1998), and *Mt. Hawley Insurance Co. v. FSLIC,* 695 F. Supp. 469 (C.D. Cal. 1987), involved IvI exclusions with no shareholder suit carve-outs, unlike the Policy in this case.  Moreover, the *Mt. Hawley* court incorrectly concluded that FSLIC, as receiver, represented the interests of the bank only and failed to consider the many separate interests that FDIC, as receiver, represents pursuant to 12 U.S.C. § 1821(d).  *See Mt. Hawley,* 695 F. Supp. at 482-83.

### d. The IvI Exclusion is Aimed at Preventing Collusive Suits

The IvI exclusion in this case includes an exception or carve-out for shareholder derivative claims and other non-collusive claims. *See* Emerick Decl., Exh. B, ¶ 12(g). Under this exception, derivative claims are covered as long as they are brought "without the solicitation, assistance, participation or intervention of any **Insured** or any affiliate of the **Company**." This language demonstrates that the intent of the IvI exclusion in the Policy is to prevent collusive lawsuits. *Id.*

"Most courts agree … that the obvious intent behind the 'insured v insured' exclusion is to protect [insurance companies] from collusive suits among [the corporation] and its directors and officers." *Sentry*, 867 F. Supp. at 60 (quoting *Zandstra*, 756 F. Supp. at 431); *Am. Cas.*, 791 F. Supp. at 278; *Baker*, 758 F. Supp. at 1349-50; *Am. Cas.*, 814 F. Supp. at 1026; *Am. Cas.*, 1990 U.S. Dist. LEXIS 6065, at *41 n. 25; *Slaughter*, 842 F. Supp. at 374. "Such a concern is not implicated here," where the FDIC "is an adverse party, not in collusion with the directors and officers of [the insured]." *Sentry*, 867 F. Supp. at 60; *see also MegAvail, Inc. v. Ill. Union Ins. Co.*, No. 05-1374, 2006 U.S. Dist. LEXIS 78329, at *7-9 (D. Or. Oct. 26, 2006).

Progressive acknowledges that "the presumed purpose" of the IvI exclusion is to prevent collusive suits, but then asserts, incorrectly, that this Court may not

-23-

consider that purpose. *See* Memo [Doc. 46-1], p. 12. *Greenwich Ins. Co. v. Lecstar Corp.*, No. 1:05-CV-3275-RLV, 2006 U.S. Dist. LEXIS 53601 (N.D. Ga. July 20, 2006), upon which Progressive relies for that argument, has no application because it did not involve any ambiguity in the application of the IvI exclusion. In *Greenwich*, one corporate officer sued other officers and directors of the company, leaving no question as to the application of the IvI exclusion. *Id.* at *6-7. *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224 (11th Cir. 2005), upon which the Court relied in *Greenwich*, likewise involved a former officer suing the insured company, leaving no ambiguity and thus "no reason to bypass the policy's plain meaning." *Id.* at 1228.

Here, in contrast, the absence of a regulatory exclusion in the Policy and the Policy's coverage of claims arising post-failure create ambiguity – requiring consideration of the anti-collusive rationale for the exclusion.

### 3. The Policy's Definition of "Loss" Does Not Preclude Coverage

#### a. Progressive's Construction of the Defaulted Loan Carve-Out Conflicts with its Prior Statements and the Policy

Progressive's invocation of the defaulted loan carve-out from the definition of "Loss" as a means to avoid coverage contradicts its prior representations to its insureds and conflicts with the language of its Policy and industry custom and

-24-

practice.[16]   No court has ever interpreted such a carve-out to defeat coverage for the very claims that the Policy was written to cover, and for which Progressive collected substantial premiums.

Progressive's position on the defaulted loan carve-out makes no sense given the plain language of the coverage grant, which states: "The Insurer will pay on behalf of the Insured Persons, *Loss resulting from Claims*" (emphasis added). "Loss" is defined as "Defense Costs and any amount which the Insured Persons . . . are legally obligated to pay resulting from a Claim, including damages, judgments, settlements … ." That is precisely what Progressive is being called upon to cover in this case.   Exh. A-2, § IV(N).   The Officer Defendants are the "Insured Person[s],"   and the Loss that Progressive covers is *their* loss, including defense costs and losses resulting from a judgment based on their tort liability.   FDIC-R is making the Claim, and is not trying to recover "Loss" as an insured.[17]

Certain specified forms of loss that the *Insured Persons* are legally obligated to pay are excepted from the Loss definition, including "any unpaid, unrecoverable or outstanding loan … to any customer."  Exh. A-2*,* § IV(N).   The FDIC's claim does not seek to hold the Insureds liable for "unpaid loans" and Progressive is *not*

---

[16]     *See* Emerick Decl., Exh. B, ¶¶ 12(i), 12(l), and 12(n); Exhs. A-6 to A-8.

[17]     Emerick Decl., Exh. B, ¶ 12(m).

Response in Opposition to MSJ

being called upon to cover loss to its Insureds on unpaid loans.  The Officer Defendants' Loss will not include any loss to them personally from an "unpaid, unrecoverable, or outstanding loan ... to any customer."  Seen in the proper light, Progressive's defaulted loan carve-out argument is untenable.  The definition of "Loss" does not eliminate coverage for any claims or liabilities, but rather only for certain specified items of loss to its insureds (*e.g.,* taxes, fines, or outstanding loans to customers).[18]

In the D&O Action, FDIC-R seeks recovery of civil damages resulting from the Officer Defendants' negligence and gross negligence.  FDIC does not sue for breach of a loan agreement with a "customer" or recovery of unpaid loans.  Complaint, ¶¶ 1, 46, and 59.  While one measure of the damages FDIC-R seeks from the Officer Defendants could be the loss suffered on loans that should never have been made absent their tortious conduct, that does not mean that FDIC-R's damages are excluded from the definition of "Loss."  If the Policy did not cover

---

[18]   As part of its effort to escape coverage, Progressive tries to re-cast these "carve-out" items as an exclusion for any claims that may relate to them.  In reality, the language serves a far more limited purpose.  In contrast to the exclusions sections of the Policy, which contain broad prefatory statements that Progressive is not liable for "Loss in connection with any **Claim** arising out of or in any way involving" a given topic, Exh. A-2, § V, the exceptions to the "Loss" definition are limited and do not except loss "in any way involving" loans.

damages in any way related to loans, Progressive would not have represented in its Coverage Summary Handbooks that its Policy covered damage claims based on the "the value of charged-off loans."  Exhs. A-6 through A-8.  Progressive's argument cannot be reconciled with this admission.

Further, Progressive's argument is undermined by an interpretation of the policy as a whole.  The limitation in the definition of "Loss" for "any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer" is not designed to exclude liability coverage for everything relating to loans. For example, the Policy contains a "Legal Lending Limit Exclusion" in connection with Insuring Agreement C that provides that Progressive is not liable for "any Claim arising out of or in any way involving any extension of credit which was, at the time of its making, in excess of the legal lending limit of the Company."  Exh. A-2, § VI.G.  Such an exclusion would be mere surplusage if the policy did not cover any management liability related to lending.

### b.  Progressive's Arguments Conflict With Industry Practice

Industry custom and practice also support a finding of coverage, inasmuch as a coverage restriction like the defaulted loan carve-out now advocated by Progressive had to have been expressed clearly and conspicuously. Emerick Decl., Exh. B, ¶ 12(k).  Progressive's strained interpretation of the defaulted loan carve-

-27-

out flies in the face of this custom and practice, and is inconsistent with its representations in its Coverage Summary Handbooks. *Id.,* ¶¶ 12(k), 12(n).  At a minimum, given Progressive's double-speak, the definition of "Loss" is ambiguous and must be construed in favor of coverage.

### c.     Progressive's Fails to Cite Relevant Case Authority

The cases cited by Progressive in support of its strained interpretation of the defaulted loan carve-out have no application.   The majority of them interpret inapposite exclusions in fidelity bonds, an entirely different type of coverage since such policies insure against first-party losses.  *See Third Fed. Sav. & Loan Assoc. v. Fireman's Fund Ins. Co.,* 548 F.2d 166, 172 (6th Cir. 1977); *Humboldt Bank v. Gulf Ins. Co.,* 323 F. Supp. 2d 1027, 1030 (N.D. Cal. 2004); *see also RTC* v. *Aetna Cas. & Surety Co. of Illinois,* 25 F.3d 570, 578-79 (7th Cir. 1994).   In contrast, D&O policies provide *liability* coverage for damage claims brought by third parties, such as FDIC-R's claims in this case.

*Southwest Georgia Financial Corp. v. Colonial American Casualty and Surety Co.,* 397 Fed. Appx. 563 (11th Cir. 2010), an unreported decision cited by Progressive, in fact supports FDIC-R's position that the defaulted loan carve-out does not apply to its damage claims.  In that case, the carrier properly denied coverage for *the insured bank's* loss on the unpaid principal on a loan participation

-28-

purchased by the bank.   However, the carrier *covered* the bank for settlement amounts other than the unpaid principal on the loan.   *Id.* at 566 n.3.   The case did *not* involve claims *against* the insured for damages arising from negligence and gross negligence.

### d.    Progressive's Arguments Render Coverage Illusory

Finally, under Progressive's construction of the Policy, it essentially covers nothing. Omni and its directors and officers were bankers – thus, their primary business activity was making loans.   Emerick Decl., Exh B, ¶¶ 12(j), 12(o).   It is simply inconceivable that Omni and its directors and officers would have purchased D&O liability insurance that did not cover them for *their primary business activity*, or that such insurance could conscionably be sold by Progressive.

It is well settled that courts should not construe exclusions in a manner that renders coverage under the policy to be illusory.  *See Transp. Ins. Co. v. Piedmont Constr. Group, LLC*, 301 Ga. App. 17, 21, 686 S.E.2d 824 (2009); *Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 518, 466 S.E.2d 48 (1995); *see also Tifton Machine Works v. Colony Ins. Co.*, 224 Ga. App. 19, 22, 480 S.E.2d 37 (1996) (exclusion cannot be construed to "eviscerat[e]" coverage).   The Court should reject Progressive's strained interpretation of the defaulted loan carve-out, which

would enable it to collect hundreds of thousands of dollars in premiums without affording any meaningful coverage to the Officer Defendants.

### 4.    Ambiguity Must be Resolved in Favor of Coverage

Finally, in all events, the patent and latent ambiguities in the IvI exclusion and the defaulted loan carve-out must be construed against Progressive and in favor of the Officer Defendants.  *Arrow Exterminators,* 136 F. Supp. 2d at 1348; *Claussen,* 888 F.2d at 749 (citing O.C.G.A. § 13-2-2(2) and (5)).  The Court must resolve doubt against Progressive as the drafter of the Policy and in favor of coverage.  *See id.; see also Mijalis,* 800 F. Supp. at 403; *St. Paul,* 765 F. Supp. at 548; *Am. Cas.,* 814 F. Supp. at 1025-26; *Zandstra,* 756 F. Supp. at 433-34 & n. 7-8; *Am. Cas.,* 1990 U.S. Dist. LEXIS 6065, at *41; *Am. Cas.,* 704 F. Supp. at 902; *Nat'l Union,* 1989 WL 251473, at *4; *Am. Cas.,* 713 F. Supp. at 316; *Mmahat,* 1988 U.S. Dist. LEXIS 1825, at *7; *Finci v. Am. Cas. Co.,* 593 A.2d 1069, 1081 (1991).  For this reason alone, Progressive's Motion should be denied.

## IV.    CONCLUSION

For all of the foregoing reasons, the FDIC-R respectfully requests that the Court defer ruling on Progressive's motion until after completion of discovery and supplemental briefing.  Alternatively, the Motion should be denied outright.

Respectfully submitted this 24th day of August, 2012.

Response in Opposition to MSJ

SIMKINS HOLLIS LAW GROUP, PC


        /s/ S. Paul Smith
Jeanne Simkins Hollis (GA Bar # 646890)
S. Paul Smith (GA Bar # 663577)
1924 Lenox Road, NE
Atlanta, GA  30306
Telephone:  (404) 474-2328
Facsimile:   (770) 587-0726
E-mail:         psmith@shlglaw.com

           AND

James A. Brown (LA Bar #14101) (*PHV*)
       E-mail:  jabrown@liskow.com
Carey L. Menasco (Bar #28131) (*PHV*)
       E-mail: clmenasco@liskow.com
Erin L. Delatte (LA Bar #33088) (*PHV*)
       E-mail:  eldelatte@liskow.com
LISKOW & LEWIS, PLC
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  (504) 581-7979
Facsimile:   (504) 556-4108

*Attorneys for the Federal Deposit Insurance
Corporation, as Receiver of Omni National
Bank*

-31-

## **CERTIFICATION PURSUANT TO LOCAL RULES**

Pursuant to the Local Rules this certifies that this document was prepared using the New Times Roman font in 14 point.  These font and point selections are approved by L.R.5.1.

_/s/ S. Paul Smith_____

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to all attorneys of record.

_/s/ S. Paul Smith_____

Response in Opposition to MSJ